UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:

HERMAN JACOBS, VICTOR JACOBS, and
JACOB JACOBS,                                                    Case No. 03-84455-ess
                                                                Chapter 7
                              Debtors.                          (Jointly Administered)


----------------------------------------------------------------x

GREEN POINT FUNDING, INC.,

                              Plaintiff,                        Adv. Pro. No. 05-8555-ess

       -against-

VICTOR JACOBS and
JACOB JACOBS,

                              Defendants.

----------------------------------------------------------------x

### MEMORANDUM DECISION DENYING THE DEFENDANTS' MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT

APPEARANCES

Jeffrey Herzberg, Esq.                    Jeremy Rosenberg, Esq.
Zinker & Herzberg, LLP                    Law Offices of Sheldon Eisenberger
278 East Main Street (P.O. Box 866)       30 Broad Street (27th Floor)
Smithtown, NY 11787                       New York, NY 10004

Attorneys for Plaintiff                   Attorneys for Defendants

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

By motion dated July 13, 2007 (the "Motion to Dismiss"), Victor Jacobs and Jacob

Jacobs, the Debtors in these Chapter 7 cases and the Defendants in this adversary proceeding (the

"Adversary Proceeding"), seek an order dismissing this Adversary Proceeding brought by Green

Point Funding, Inc. (the "Plaintiff"), pursuant to Rule 12 of the Federal Rules of Civil Procedure,

made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012, and

for attorneys' fees and costs, pursuant to Section 523(d) of Title 11 of the United States Code

(the "Bankruptcy Code").  The Plaintiff opposes the Motion to Dismiss.  A hearing on the

Motion to Dismiss was held on August 15, 2007, at which counsel for the Plaintiff and counsel

for the Defendants appeared and were heard.  Based on the entire record and consideration of the

relevant factors, and for the reasons stated below, the Motion to Dismiss is denied.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and

157(b)(2)(I), as a proceeding seeking a determination as to the dischargeability of particular

debts.

## Procedural History

On April 15, 2005, Green Point Mortgage Corporation commenced this Adversary

Proceeding by filing a complaint (the "Original Complaint") objecting to the dischargeability of

debts arising from mortgages loans made by GFI Mortgage Bankers, Inc. ("GFI").  Docket No.

1.  Attached to the Original Complaint was an adversary proceeding cover sheet similarly stating

that "Green Point Mortgage Corporation" was the Plaintiff.  On December 19, 2005, the

Defendants moved to dismiss the Original Complaint, on grounds that it failed to state a cause of

action upon which relief could be granted.  Docket No. 12.

On April 5, 2006, before that motion was heard, the Plaintiff filed a first amended complaint (the "First Amended Complaint"), and on July 25, 2006, the Defendants' motion to dismiss the Original Complaint was marked off the Court's calendar.  Docket No. 17; *see* Docket Entry dated July 25, 2006.  In the caption of the First Amended Complaint, the plaintiff is identified as "Green Point Funding, Inc.," and in the text of the First Amended Complaint, the plaintiff is identified as "Green Point Mortgage Corporation," "GreenPoint," and "Green Point." *See, e.g.*, First Amended Complaint p. 1 and ¶ 11.

On May 16, 2006, the Plaintiff filed a second amended complaint (the "Second Amended Complaint").  Docket No. 22.  In the caption of the Second Amended Complaint, the Plaintiff is identified as "Green Point Funding, Inc.," and in the text of the Second Amended Complaint, the Plaintiff states, "Green Point Funding, Inc. ('GreenPoint' or the 'Plaintiff'), as the assignee of GFI Mortgage Bankers, Inc. files this amended complaint . . . ."  Second Amended Complaint p. 1.  The Second Amended Complaint was filed in connection with an agreement between the parties to settle this Adversary Proceeding, and on May 16, 2006, the parties filed a stipulation of settlement and proposed order resolving the matter.  Docket No. 21.

On August 1, 2006, a hearing was held on the parties' application to approve the stipulation of settlement, at which counsel for the Plaintiff and counsel for the Defendants appeared and were heard.  *See* Docket No. 28.  The Court, by former Judge Melanie Cyganowski, disapproved the stipulation of settlement.  Docket No. 28.  On August 28, 2006, the Plaintiff sought reconsideration of the Court's disapproval of the settlement.  Docket No. 29.

On September 28, 2006, a hearing was held on the motion to reconsider the order disapproving the settlement.  Docket Entry dated September 28, 2006.  The Court determined that reconsideration should be denied and that the operative pleading was the First Amended

Complaint.  Docket No. 38.

On February 28, 2007, this Adversary Proceeding, and the Chapter 7 bankruptcy cases of Victor Jacobs and Jacob Jacobs, were transferred to Judge Elizabeth S. Stong.  Docket No. 45.

On May 30, 2007, a pre-trial conference and hearings on the Defendants' Motion to Dismiss the First Amended Complaint and the Plaintiff's Motion for Leave to Amend the First Amended Complaint were held, at which counsel for the Plaintiff and counsel for the Defendants appeared and were heard.  Docket Entries dated May 30, 2007.  Based on the entire record, the Court granted the Defendants' Motion to Dismiss the First Amended Complaint and also granted the Plaintiff's Motion for Leave to Amend the First Amended Complaint.  Docket No. 47.  The Plaintiff was directed to file a Fourth Amended Complaint by June 8, 2007.  *Id.*

On June 7 and 12, 2007, the Plaintiff filed the Fourth Amended Complaint (the "Fourth Amended Complaint").  Docket Nos. 46, 48.  In the caption of the Fourth Amended Complaint, the Plaintiff is identified as "Green Point Funding, Inc.," and in the text of the Fourth Amended Complaint, the plaintiff is identified as "The Green Point Funding Corporation ('GreenPoint' or the 'Plaintiff')."  Fourth Amended Complaint p. 1.  The Plaintiff is also described as "a creditor of the Debtors, as the assignee of four (4) specific mortgage loans made by GFI Mortgage Bankers, Inc. ('GFI')."  Fourth Amended Complaint ¶ 5.

On July 13, 2007, the Defendants filed the Motion to Dismiss the Fourth Amended Complaint and supporting Memorandum of Law (the "Defendants' Memorandum in Support").  Docket No. 49.  On July 18, 2007, the Plaintiff filed an Opposition to the Motion to Dismiss Fourth Amended Complaint (the "Plaintiff's Opposition").  Docket No. 51.  On July 23, 2007, the Defendants filed a Reply Declaration of Sheldon Eisenberger in further support of the Motion to Dismiss (the "Reply Declaration").  Docket No. 52.

## **Background**

In the Fourth Amended Complaint, and indeed, throughout the series of pleadings that have been filed in this matter, the Plaintiff alleges that over a period of some three weeks, from May 9, 2003, to May 30, 2003, Jacob Jacobs and Victor Jacobs obtained four loans in an aggregate amount of $1,564,500, from GFI by false pretenses and false representations, including the use of false and deceptive written statements.  Fourth Amended Complaint ¶¶ 8-10, 22, 30.  *See* Original Complaint ¶¶ 8-10, 22, 30; First Amended Complaint ¶¶ 8-10; Second Amended Complaint ¶¶ 8-10.  The Plaintiff alleges that, as assignee of these loans, it is entitled to an order declaring that they are nondischargeable in accordance with the provisions of Section 523(a)(2)(A) and Section 523(a)(2)(B) of the Bankruptcy Code.  Fourth Amended Complaint ¶¶ 24, 31.

The Defendants seek dismissal of the Fourth Amended Complaint in its entirety on several grounds.  First, the Defendants argue that the Plaintiff does not have standing to seek a finding of nondischargeability because it is an assignee of the loans at issue, and not the entity to which the false pretenses and false representations, including false and deceptive written statements, were directed.  Defendants' Memorandum in Support at 3-5.  Second, the Defendants argue that the Plaintiff's nondischargeability claims are time-barred, because the Fourth Amended Complaint was filed more than sixty days after the first date set for the meeting of creditors in the Defendants' Chapter 7 bankruptcy cases, and because the claims do not relate back to the claims asserted in the Original Complaint.  Defendants' Memorandum in Support at 5-7.  Finally, the Defendants argue that they did not waive the defense of statute of limitations by entering into a stipulation of settlement that was later disapproved by the Court.  Defendants' Memorandum in Support at 7-9.

## **Discussion**

### The Standard on a Motion to Dismiss

In reviewing a complaint for sufficiency under Rule 12(b)(6), the court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). The court accepts as true the well-pleaded factual allegations made by the plaintiff, and "must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). *See also Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied*, 535 U.S. 1054 (2002); *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

The Second Circuit has observed that in addition to the factual allegations contained in the complaint, the court may also consider the contents of any "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in the plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

This standard requires a plaintiff to do more than simply speculate about circumstances that might conceivably give rise to a claim for relief. As the Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, ___ U.S. ____, 127 S. Ct. 1955, 1964-65 (2007) (citations and quotations omitted). That is, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" in order to state a claim that survives scrutiny under Rule 12(b)(6). *Bell Atlantic*, 127 S. Ct. at 1974. *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (the *Bell Atlantic* standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*"). Thus, a claim may be sustained only if the plaintiff has "nudged [its] claims across the line from conceivable to plausible. . . ." *Bell Atlantic*, 127 S. Ct. at 1974.

The Plaintiff's Allegations

The starting point for determining whether the Plaintiff has alleged facts sufficient to state a claim upon which relief can be granted is the allegations of the present complaint – that is, the Fourth Amended Complaint.

### *The Loans at Issue*

The Plaintiff alleges that on or about May 9, 2003, GFI made a $735,000, loan to Victor Jacobs, and that the repayment of this loan was secured by a mortgage on real property located at 176 Penn Street, Brooklyn, New York. Fourth Amended Complaint ¶ 8. The Plaintiff alleges that this "mortgage loan" was assigned by GFI to the Plaintiff by an assignment dated May 9, 2003, and recorded with the City Registrar of the City of New York on April 14, 2004. *Id.*

The Plaintiff also alleges that less than a week later, on or about May 15, 2003, GFI made a "credit line loan" of $84,000, to Jacob Jacobs, and that about two weeks thereafter, on or about May 30, 2003, GFI made a further loan of $546,000, to Jacob Jacobs. Fourth Amended Complaint ¶ 9. The Plaintiff alleges that the repayment of these loans was secured by a mortgage on a condominium unit located at 171 Hooper Street, Unit 3A, Brooklyn, New York.

*Id.* The Plaintiff alleges that these "mortgage loans" were assigned by GFI to the Plaintiff by an assignment dated May 15, 2003, and recorded with the City Registrar of the City of New York on January 15, 2004. *Id.*

And the Plaintiff alleges that on or about May 30, 2003, GFI made a loan of $199,500, to Jacob Jacobs, and that repayment of this loan was secured by a mortgage on real property located at 562 Bedford Avenue, Apartment 2B, Brooklyn, New York. Fourth Amended Complaint ¶ 10. The Plaintiff alleges that this "mortgage loan" was assigned by GFI to the Plaintiff by an assignment dated May 30, 2003, and recorded with the City Registrar of the City of New York on January 28, 2004. *Id.*

<u>*The Alleged False Pretenses and False Representations*</u>

The Plaintiff alleges that Victor Jacobs and Jacob Jacobs obtained the loans at issue by false pretenses and false representations, including the use of false and deceptive written statements. In particular, the Plaintiff alleges that on their mortgage applications, Victor Jacobs and Jacob Jacobs used the last name "Jakobowitz" rather than "Jacobs," and stated in affidavits that they had never been known by any other name. Fourth Amended Complaint ¶ 11. The Amended Complaint also states that Victor Jacobs and Jacob Jacobs used false social security numbers on the applications. Fourth Amended Complaint ¶ 14.

The Plaintiff alleges that Victor Jacobs and Jacob Jacobs executed affidavits at the closings which state in part, "[t]here are no Judgments, Federal Tax Liens, Parking Violation Bureau Judgments, Environmental Control Board Judgments, Transit Adjudication Bureau Judgments or Warrants against me (us) nor have proceedings in Bankruptcy been instituted by or against me (we) in any of the above names or in any other name." Fourth Amended Complaint ¶ 15.

The Plaintiff also alleges that Victor Jacobs and Jacob Jacobs did not disclose certain information in connection with their loan applications.  For example, the Amended Complaint states that Victor Jacobs and Jacob Jacobs did not state on their loan applications that they were formerly officers, directors, and/or majority shareholders of Allou Distributors, Inc. ("Allou") Fourth Amended Complaint ¶ 12.

The Plaintiff alleges that Victor Jacobs and Jacob Jacobs did not disclose that they were "under investigation for committing an alleged arson at one or more real properties owned or controlled by Allou and/or that one or more fire insurance carriers was refusing to pay the monies due to the fire loss based on the suspicion of arson."  Fourth Amended Complaint ¶ 13. And the Plaintiff alleges that "both Victor [Jacobs] and Jacob [Jacobs] disclosed on their loan applications for all four (4) mortgage loans that neither of them were subjects of a pending lawsuit, and they never disclosed that Allou was already adjudicated a Chapter 7 bankrupt debtor . . . ." *Id.*

Finally, the Plaintiff alleges that at the closings of the mortgage loans, in May 2003, Victor Jacobs and Jacob Jacobs were shown a copy of a recorded confession of judgment in the amount of $3.2 million executed by Jacob Jakobowitz, Herman Jakobowitz, and Victor Jakobowitz, and they "claimed that they had never delivered and granted the $3.2 million confession of judgment . . . [and] executed affidavits stating that they were not one of the three (3) individuals who granted the $3.2 million confession of judgment . . . ."  Fourth Amended Complaint ¶ 16.

### *The Alleged Reliance*

As for its reliance on the alleged false pretenses and false representations, the Plaintiff alleges that neither GFI nor the Plaintiff was aware of:

> (a) the true identity of Jacob [Jacobs] and Victor [Jacobs]; (b) the existence of the
> $3.2 million confession of judgment; (c) the adjudication of Allou as a bankrupt
> debtor; and/or (d) the allegations and/or suspicions that Victor[Jacobs] and/or
> Jacob [Jacobs] were involved in an arson of real property associated with Allou.

Fourth Amended Complaint ¶ 17.

The Plaintiff further alleges that if it or GFI had known that Victor Jacobs' or Jacob Jacobs' "real last name was 'Jacobs' and not 'Jakobowitz' and/or their real social security numbers" (Fourth Amended Complaint ¶ 20); or that "the $3.2 million confession of judgment granted to Eurofactors International was actually executed by the Jacobs" (Fourth Amended Complaint ¶ 19); or that "the Jacobs were alleged to have caused and/or perpetrated an arson of real property" (Fourth Amended Complaint ¶ 18), neither it nor GFI would have made any of the four loans at issue to Victor Jacobs or Jacob Jacobs (Fourth Amended Complaint ¶¶ 18-20).

*The Alleged Losses*

As for its losses, the Plaintiff alleges:

> As reflected in Green Point's proofs of claim . . . dated April 15, 2004, the
> Plaintiff suffered the following losses on the mortgage loans:  $774,541.00 on the
> loans to Victor [Jacobs], $368,123.45 and $209,876.35 on the loans to Jacob
> [Jacobs], with the default rate of interest continuing to accrue.

Fourth Amended Complaint ¶ 23.

Whether the Plaintiff States Claims for Relief Under Section 523

The Plaintiff seeks a determination that the debts arising from the loans at issue are nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, as debts obtained by "false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  *See* Fourth Amended Complaint ¶¶ 21-24.  The Plaintiff also seeks a determination that these debts are nondischargeable pursuant to Section 523(a)(2)(B), as debts obtained by use of a "statement in writing . . . that is materially false . . . respecting the debtor's or an insider's financial condition."

11 U.S.C. § 523(a)(2)(B).  *See* Fourth Amended Complaint ¶¶ 25-31.

### *The Section 523(a)(2)(A) Claim*

The elements of a nondischargeability claim under Section 523(a)(2)(A) have been

described by this Court and others as follows:

> [A] plaintiff must establish five elements to show that a debt is nondischargeable
> under Section 523(a)(2)(A).  These are:  [F]irst, that the debtor made a false
> representation; second, that the debtor knew the representation was false at the
> time it was made; third, that the debtor made the false representation with the
> intent to deceive the creditor; fourth, that the creditor justifiably relied on the
> representation; and finally, that the creditor sustained a loss that was proximately
> caused by the false representation.

*People of the State of New York v. Suarez (In re Suarez)*, 367 B.R. 332, 338 (Bankr.

E.D.N.Y. 2007) (citing *Fleet Credit Card Servs., L.P. v. Macias (In re Macias)*, 324 B.R.

181, 187 (Bankr. E.D.N.Y. 2004); *Chase Manhattan Bank, USA, N.A. v. Giuffrida (In re

Giuffrida)*, 302 B.R. 119, 123 (Bankr. E.D.N.Y. 2003)).  *See also Charell v. Gonzalez (In

re Gonzalez)*, 241 B.R. 67, 71-72 (Bankr. S.D.N.Y. 1999).

Here, a review of the Fourth Amended Complaint shows that the Plaintiff adequately

alleges each of the elements of its claim under Section 523(a)(2)(A).  First, with respect to the

allegations concerning the Defendants, the Plaintiff has adequately alleged that Victor Jacobs

and Jacob Jacobs knowingly made false representations with the intent to deceive the creditor, in

connection with the loans at issue.  As described above, the Plaintiff alleges, among other things,

that Victor Jacobs and Jacob Jacobs applied for the loans using false names and false social

security numbers, and that they falsely stated in sworn affidavits that they had never been known

by any other names.  Fourth Amended Complaint ¶¶ 11, 14.  The Plaintiff also alleges that

Victor Jacobs and Jacob Jacobs falsely stated that there were no judgments or bankruptcy

proceedings pending against them, and that they falsely denied that they had granted a $3.2

million confession of judgment.  Fourth Amended Complaint ¶¶ 15, 16.  The Fourth Amended

Complaint further states that Victor Jacobs and Jacob Jacobs did not disclose that they were

formerly officers, directors, or majority shareholders of Allou, and similarly did not disclose that

they were under investigation for alleged arson at property owned by Allou.  Fourth Amended

Complaint ¶¶ 12, 13.  *See* pp. 7-8, *supra*.  For all of these reasons, and based on the entire record,

the Plaintiff has adequately alleged the first three elements of a Section 523(a)(2)(A)

nondischargeability claim.

Next, with respect to the allegations concerning the Plaintiff and GFI, the Plaintiff has

adequately alleged that the creditor justifiably relied on the Jacobs' allegedly false

representations and sustained a loss that was proximately caused by them.  As described above,

the Plaintiff alleges, among other things, that neither it nor GFI was aware of Victor Jacobs' and

Jacob Jacobs' true name or correct social security numbers, their execution of the $3.2 million

confession of judgment; their roles as officers, directors, or shareholders of Allou; the

adjudication of Allou as a debtor in bankruptcy; or the investigation of Victor Jacobs and Jacob

Jacobs for Arson at a property owned by Allou.  Fourth Amended Complaint ¶¶ 17-20.  And the

Fourth Amended Complaint states that if the Plaintiff or GFI had known these matters, then

neither it nor GFI would have made any of the four loans at issue.  Fourth Amended Complaint

¶¶ 18-20.  Finally, the Plaintiff alleges that it has suffered losses in the amounts indicated in its

proofs of claims.  Fourth Amended Complaint ¶ 23.

For all of these reasons, and based on the entire record, the Plaintiff has adequately

alleged the final two elements of a Section 523(a)(2)(A) nondischargeability claim.

### *The Section 523(a)(2)(B) Claim*

In order to state a claim under Section 523(a)(2)(B) of the Bankruptcy Code, a

creditor must allege that the debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit" by using:

> [A] statement in writing –
> > (i)     that is materially false;
> > (ii)    respecting the debtor's or an insider's financial condition;
> > (iii)   on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv)   that the debtor caused to be made or published with intent to deceive; . . .

11 U.S.C. § 523(a)(2)(B).

Here, a review of the Fourth Amended Complaint shows that the Plaintiff adequately alleges each of the elements of its claim under Section 523(a)(2)(B). As described above, the Plaintiff alleges that Victor Jacobs and Jacob Jacobs made materially false written statements respecting their financial condition in connection with seeking the loans at issue. *See* pp. 7-8, *supra*. For example, the Fourth Amended Complaint states that Victor Jacobs and Jacob Jacobs misrepresented their names, social security numbers, bankruptcy debtor status, and employment status on their loan applications. *See* Fourth Amended Complaint ¶¶ 11-16.

The Fourth Amended Complaint also states that Victor Jacobs and Jacob Jacobs did not disclose that "Allou, their primary source of income, had been closed down in accordance with the adjudication of being a Chapter 7 bankrupt debtor" (Fourth Amended Complaint ¶ 26) and also did not disclose that "they had personally guaranteed the loans made by one or more financial institutions . . . to Allou" (Fourth Amended Complaint ¶ 27).

As for reliance, the Plaintiff alleges:

> Without their salary income from Allou, it was doubtful that the Jacobs, individually or jointly, had the financial ability to repay the mortgage loans made by the Plaintiff to the Jacobs, which loans were assigned to the Plaintiff as indicated above.
> . . .
> If GFI and/or the Plaintiff knew or had reason to know that it was reasonably

foreseeable that the Jacobs lacked the financial ability to satisfy the monthly monetary obligations related to the above-referenced mortgage loans due to the failure of Allou, neither GFI nor the Plaintiff would have made the subject four (4) mortgage loans.

Fourth Amended Complaint ¶¶ 28, 30.

For all of these reasons, and based on the entire record, the Plaintiff has adequately alleged the final two elements of a Section 523(a)(2)(B) nondischargeability claim.

<u>Whether the Plaintiff Has Standing To Bring the Section 523 Claims</u>

The Defendants argue that the Plaintiff does not have standing to pursue a claim for nondischargeability of the loans at issue because it is not the entity to which the alleged false pretenses and false representations, including false and deceptive written statements, were directed. Citing *State of California Public Employees' Retirement System v. Shearman & Sterling*, 95 N.Y.2d 427, 741 N.E.2d 101, 718 N.Y.S.2d 256 (2000) ("*CalPERS*"), and *Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146 (2d Cir. 1995), the Defendants also argue that "[e]ven if the loans were assigned to Greenpoint . . . there was no assignment of any purported claim that could serve as a basis for a claim of non-dischargeability of this debt." Defendants' Memorandum in Support at 3. *See* Defendants' Memorandum in Support at 3-5.

The Defendants further argue that the assignments as alleged lack "the requisite language necessary to effectuate a proper assignment of a cause of action arising from a tort or otherwise alleged misrepresentations" by Victor Jacobs or Jacob Jacobs. Defendants' Memorandum in Support at 4. *See* Reply Declaration ¶ 3. And the Defendants urge that the claims for nondischargeability asserted in the Fourth Amended Complaint are "necessarily outside the loan contract assigned to Greenpoint." Defendants' Memorandum in Support at 4. In addition, the Defendants argue that the documents relied upon by the Plaintiff show that assignments were

made by GFI to Greenpoint Mortgage Funding, Inc., not Greenpoint Funding, Inc., the Plaintiff in this action.  Reply Declaration ¶ 2.

The Plaintiff argues that there was no reservation of any right, title, or interest in GFI as assignee when the loans at issue were assigned to it.  Plaintiff's Opposition at 9.  The Plaintiff observes that each of the assignments contains the identical language, that is, that the assignment "hereby assigns unto the assignee" the mortgage loan, and further provides:

> "TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns OF the assignee forever."

*Id.*  As noted above, the Fourth Amended Complaint states that the assignments were recorded with the City Registrar of the City of New York.  Fourth Amended Complaint ¶¶ 8-10.  For these reasons, the Plaintiff argues, it has standing to bring these claims under Section 523 because "'[w]hen a valid assignment is made, the assignee steps into the assignor's shoes and acquires whatever rights the latter had.'"  Plaintiff's Opposition at 9-10, quoting *Careplus Med. Supply v. Citiwide Auto Leasing, Inc*., No. 86041/2003 slip op. (N.Y. Civ. Ct. Mar. 29, 2005).

In addition, the Plaintiff argues that "GreenPoint" and GFI are "associated or affiliated entities under the same holding company umbrella," and either the Plaintiff or GFI could pursue this action, if necessary.  Plaintiff's Opposition at 11.

It is widely acknowledged that an assigned claim may be asserted by the assignee as a creditor in a bankruptcy case.  As one commentator has noted, "[a]s a general rule, claims are freely transferable, and the assignee of an obligation is entitled to assert an assigned claim against a debtor in bankruptcy."  COLLIER ON BANKRUPTCY ¶ 553.03[3][h] (15th ed. rev. 2007).

And as the Second Circuit has held, in connection with the assignment of a claim, "New York law does not require specific boilerplate language to accomplish the transfer of causes of

action sounding in tort.  Rather, 'any act or words are sufficient which "show an intention of transferring the chose in action to the assignee."'"  *Banque Arabe*, 57 F.3d at 151-52 (citations omitted).  The court concluded that the assignment at issue validly transferred tort claims based on fraud, and observed, "[t]his conclusion is also consistent with the general trend in New York toward adopting principles of free assignability of claims, including those of fraud.  *See* N.Y. Gen. Oblig. Law §§ 13-105 & 13-107 (McKinney 1978)."  *Banque Arabe*, 57 F.3d at 153.

The New York Court of Appeals' decision in *CalPERS* is similarly unavailing to the Defendants.  The Defendants argue that *CalPERS* requires that before a party may recover in tort for a loss caused by a fraudulent misrepresentation, there must be "a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity."  Defendants' Memorandum in Support at 3.  But in *CalPERS,* the plaintiff, a purchaser of a commercial loan, sought to pursue a claim against the law firm that prepared the loan documents, not the obligor or guarantor of the loan.  Plaintiff's Opposition at 5-6.  As the court found:

> The claim alleged here – that Shearman & Sterling prepared a defective note by materially altering the prepayment and acceleration provisions of the standard form note and the terms of the commitment – does not arise from the note itself or from the loan documents.  Rather, CalPERS' claim against Shearman & Sterling is premised on the firm's failure to prepare loan documents . . . that complied with the terms of the Correspondent Agreement.  Thus, while 'all' of [the assignor's] rights to and under the loan documents were assigned to CalPERS, 'all' in this case does not include the right to assert [the assignor's claims, whatever they may be, against Shearman & Sterling arising from the firm's failure to observe the specifications of the Correspondent Agreement.

*CalPERS*, 95 N.Y.2d at 436, 741 N.E.2d at 105, 718 N.Y.S.2d at 260.

Here, by contrast, the Plaintiff's nondischargeability claims are claims against the borrowers, not a claim against a professional or other non-party to the loans at issue.  For that reason, they are more in the nature of claims "to and under the loan documents," as the Court of

Appeals stated.  *Id.*

The Ninth Circuit Bankruptcy Appellate Panel recently considered a similar issue in *New Falls Corp. v. Pateel Boyajian (In re Boyajian)*, 367 B.R. 138 (9th Cir. B.A.P. 2007).  There, the court considered whether the "reasonable reliance" required by Section 523(a)(2)(B) requires "reasonable reliance not only by the lender who extended the original credit to a debtor, but also by an assignee."  *In re Boyajian*, 367 B.R. at 140-41.

The court began with the premise that "'[s]tated as a basic principle, an assignee merely steps into the shoes of his assignor.'"  *In re Boyajian*, 367 B.R. at 145, quoting *State Bar v. Tooks (In re Tooks)*, 76 B.R. 162, 164 (Bankr. S.D. Cal. 1987).  Reviewing cases decided by courts in several Circuits, the court found that "[i]mposing a requirement that [the assignee] prove its own reliance, independent of [the assignor's], not only imposes a barrier to enforcement of its assignment rights, it makes no sense when applying the remedy made available under § 523(a)(2)(B)."  *In re Boyajian*, 367 B.R. at 146.  The court further found:

> The basic policy supporting discharges in bankruptcy is to give the honest but unfortunate debtor a fresh start.  *Marrama v. Citizens Bank of Mass.*, ___ U.S. ___, 127 S. Ct. 1105, 1107, 166 L. Ed. 2d 956 (2007); *Brown v. Felsen*, 442 U.S. 127, 128, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979).

> The *Tooks* court discussed the policy considerations implicated by failure to make the exception to discharge provisions of the Code available to assignees:

>> In the future, a dishonest debtor will know that he will be protected from the financial consequences of his wrongdoing in situations where a surety agrees to pay the victim.  The debt will be paid by the surety to the victim/creditor and, since the surety would not have assignment rights, the debtor will be effectively discharged from the consequences of his own willful and malicious conduct.

> *Tooks*, 76 B.R. at 164.  The bankruptcy court below expressed the same concerns in the § 523(a)(2)(B) context:  "Because really what you're saying to me it's okay to lie . . . in order to get the credit because if you're really lucky somebody else will come along and purchase this debt . . . ."  Transcript of December 8, 2005 Hearing, pp. 35-36.

> There is no policy expressed in the Bankruptcy Code to reward such dishonesty by debtors, and no such policy should be implemented in the absence of clear direction from Congress. The bare use of the term "creditor" in § 523(a)(2)(B)(iii) does not provide such clear guidance.

*In re Boyajian*, 367 B.R. at 147-48.

For all of these reasons, and based on the entire record, the Plaintiff has adequately alleged that it has standing to assert the claims in the Fourth Amended Complaint.

<u>Whether the Plaintiff's Section 523 Claims Are Barred by the Statute of Limitations</u>

The Defendants argue that the claims asserted in the Fourth Amended Complaint are barred by the statute of limitations established by Federal Rule of Bankruptcy Procedure 4007(c) for claims to determine the dischargeability of a debt, for two principal reasons. First, the Defendants argue that the Fourth Amended Complaint is time-barred because the Original Complaint, which was timely filed on April 18, 2005, names "Greenpoint Mortgage Corporation" as the plaintiff, while the Fourth Amended Complaint names a different entity, "Green Point Funding, Inc." or "Green Point Funding Corporation," as the plaintiff. Defendants' Memorandum in Support at 5-6. And second, the Defendants argue that the statute of limitations cannot be avoided by the "relation-back" doctrine as reflected in Federal Rule of Civil Procedure 15(c). Defendants' Memorandum in Support at 6-7. The Defendants further note that they have not waived their statute of limitations defense, whether through entry into a proposed settlement or otherwise. Defendants' Memorandum in Support at 7-9.

The Plaintiff argues that the Fourth Amended Complaint is not barred by the statute of limitations because it relates back to the Original Complaint, which was timely filed. Plaintiff's Opposition at 12-15. The Plaintiff also argues that the Defendants waived the defense of statute

of limitations when they entered into the stipulation of settlement that was ultimately disapproved by the Court.  Plaintiff's Opposition at 11.

The amendment of a pleading is governed by Rule 15(c), which provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  FED. R. CIV. P. 15(c)(2).  "Although the relation back of amendments switching plaintiffs – as opposed to defendants – is not explicitly treated in Rule 15(c), 'the attitude taken in [the rule] toward change of defendants extends by analogy to amendments changing plaintiffs.'"  *Allied Int'l v. International Longshoremen's Ass'n*, 814 F.2d 32, 35 (1st Cir. 1987), quoting FED. R. CIV. P. 15(c) advisory committee note.  *See Reyna v. Flashtax, Inc.*, 162 F.R.D. 530, 533 n.1 (S.D. Tex. 1995) ("[F]or purposes of the 'relation back' doctrine, a correction of a misnomer is treated as a change of parties.")

Rule 15(c) does not set a high bar for relation back, so long as the claims attempted to be asserted in the new complaint share a reasonable measure of common ground with the allegations of the original pleading.  As courts have found, "adequate notice" not of the particulars but of the "general fact situation" is all that is required.  *Contemporary Mission, Inc.*, 665 F. Supp. at 255-56.  *See Benfield*, 26 F.3d at 23 (relation back should be denied where there is no common ground between the allegations of the original complaint and those of the amended pleading in order to avoid "unfair surprise").

As the Second Circuit has observed:

> The purpose of "Rule 15 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.'"  "For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading. . . .'"  Under Rule 15, "the central inquiry is

whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs.

In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an "entirely distinct set" of factual allegations will not relate back.

*Slayton v. American Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (citations omitted). *See Contemporary Mission, Inc. v. N.Y. Times Co.*, 665 F. Supp. 248, 255-56 (S.D.N.Y. 1987) (holding that a claim relates back under Rule 15(c) if the "general fact situation alleged in the original pleading" provided adequate notice of the new allegations), *aff'd*, 842 F.2d 612 (2d Cir. 1988), *cert. denied sub nom. O'Reilly v. N.Y. Times Co.*, 488 U.S. 856 (1988); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1263 (S.D.N.Y. 1992).

In addition, the Second Circuit has found that where fraud is alleged, a new claim will relate back if there is "sufficient commonality" between the new claim and the matters alleged in the original pleading to avoid "unfair surprise" to the defendant. *Benfield v. Mocatta Metals Corp.*, 26 F.3d 19, 23 (2d Cir. 1994).

At the outset, the Court declines to adopt the position that the Defendants have waived their ability to assert a statute of limitations defense by entry into a stipulation of settlement. By rejecting that settlement, the Court wiped away all of its provisions. There simply is no basis in this record to conclude that the Defendants somehow remain bound by a single provision of the stipulation of settlement where the settlement as a whole was rejected by the Court.

But while the Defendants may assert this defense, they will not prevail on it. Here, a review of the Original Complaint and the Fourth Amended Complaint shows that the Plaintiff's claims in each complaint arise out of the same "conduct, transaction, or occurrence" – that is, the

four loans obtained by Victor Jacobs and Jacob Jacobs over a period of some three weeks, from May 9, 2003, to May 30, 2003, from GFI, and the alleged false pretenses and false representations made by Victor Jacobs and Jacob Jacobs in connection with those loans.  Fourth Amended Complaint ¶¶ 8-10, 22, 30; Original Complaint ¶¶ 8-10, 22, 30.  *See* pp. 6-7, *supra*. For these same reasons, a review of these pleadings also shows that Victor Jacobs and Jacob Jacobs received "adequate notice" of the "general fact situation" giving rise to the Plaintiff's Section 523 claims.  *Contemporary Mission, Inc.*, 665 F. Supp. at 255-56.

For all of these reasons, and based on the entire record, the Plaintiff has adequately alleged that it has standing to assert the claims in the Fourth Amended Complaint.

### Conclusion

For the reasons stated herein, the Motion to Dismiss is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.


Dated: Brooklyn, New York          ***s/Elizabeth S. Stong***_____
  November ***21***, 2007          ELIZABETH S. STONG
            UNITED STATES BANKRUPTCY JUDGE